[L. A. No. 21998.   In Bank.   Apr. 28, 1952.]

C. R. DRAKE et al., Appellants, v. CITY OF LOS
ANGELES et al., Respondents.

G. G. Baumen, S. V. O. Prichard, Dockweiler & Dockweiler
and Frederick C. Dockweiler for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), Andrew O. Porter, Deputy County Counsel, Ray L. Chesebro, City Attorney, John L. Flynn, Assistant City Attorney, Weldon L. Weber, Deputy City Attorney, Faries & McDowell, McIntyre Faries, Stanley A. Furman, Loeb & Loeb and Herman F. Selvin for Respondents.

SHENK, J.—The plaintiffs as taxpayers of the city of Los Angeles commenced this action under section 526a of the Code of Civil Procedure for an injunction to restrain the city and

the Housing Authority of the City of Los Angeles and other named defendants from proceeding with the 10,000 unit slum-clearance and low-rent housing project and program outlined in the opinion in the companion case of *Housing Authority of the City of Los Angeles* v. *City of Los Angeles, ante,* p. 853. The defendants' demurrers to the complaint were sustained without leave to amend. The plaintiffs appealed from the judgment of dismissal which followed. There is also a motion to dismiss the appeal.

The undisputed facts leading to the filing of the complaint herein on December 29, 1950, are stated in the Housing Authority case, and this opinion in effect is a continuation thereof to resolve the issue in controversy here.

By this action the plaintiffs sought a judgment declaring invalid Ordinance No. 95,222 adopted by the city council on August 8, 1949, pursuant to section 8(b) of the Housing Authorities Law, now section 34313 of the Health and Safety Code. That ordinance approved the 10,000 unit low-rent housing project and authorized the execution of the cooperation agreement with the housing authority and the latter's application to the federal agency for preliminary loans and annual contributions. Section 34313, as then in effect and as here material, provided that no low-rent housing or slum-clearance project should be developed, constructed or owned by a housing authority until the city council approved it by resolution duly adopted.

The asserted grounds of invalidity of the ordinance are that it was not first submitted to the city planning commission for report and recommendation in relation to the established master plan of the city; that none of the sites for the project received the approval of the city planning commission; that the project had not been approved by a majority of the qualified electors of the city; and that the contracts for financial assistance in the development of the project entered into by the housing authority and the federal agency have not been approved by the city pursuant to the city charter. The plaintiffs sought an injunction to restrain further action under the agreements until the project had been approved by a majority of the electors of the city and as required by section 97 of the city charter.

The plaintiffs contend that submission of the plans for the proposed location, development and construction of the project to the city planning commission for report and recommendation was required as a condition of valid approval

by section 97 of the city charter and by section 73 of the State Conservation and Planning Act.

The charter provision prohibits the adoption of an ordinance or resolution authorizing, ordering, or involving the acquisition of any public building site or the location or appearance of any public building until the ordinance or resolution is first submitted for report and recommendation of the city planning commission. Section 73 of the state act (Stats. 1947, p. 1909, as amended; 2 Deering's Gen. Laws, Act 5211c), provides that when a city has adopted a master plan, no public building or structure shall be constructed or authorized in the area for which the master plan shall have been adopted until the location, character and extent thereof shall have been submitted to and a report received from the local planning commission.

In *Housing Authority* v. *City of Los Angeles* it was again pointed out that the powers and duties of the city council and of the housing authority in respect to the proposal, planning, development, location and construction of slum-clearance and low-rent housing projects, derive from the Housing Authorities Law (Health & Saf. Code, § 34200 et seq.), and the Housing Cooperation Law (Health & Saf. Code, § 34500 et seq.), and not from local law or other state law unless specifically provided.

Section 34320 of the Housing Authorities Law provides that no law concerning the acquisition, operation, or disposition of property by other public bodies is applicable to the housing authority unless the Legislature specifically so states. The provisions of the charter and of the state conservation and planning act apply to the property which is the subject thereof, namely, city acquired, owned and operated public sites and buildings. (Const., art. XI, § 6; see, also, *Riedman* v. *Brison*, 217 Cal. 383-387 [18 P.2d 947].) ▮The property and projects contemplated under the Housing Authorities Law are those to be acquired, developed, constructed, owned and operated by the housing authority, and are govei by that statute except as otherwise specifically required. local law governing the acts and authority of the city coun, as to slum-clearance and low-rent housing projects has bee. superseded by the statute. (*Housing Authority* v. *Superioi Court*, 35 Cal.2d 550 [219 P.2d 457].)

▮ There is no provision in the statute requiring submission to or report by the planning commission prior to the city's approval of a project. Section 8(b) of the act (now

§ 34313) requires the approval of the city council before a project may be developed, constructed or owned by a housing authority. Approval by the planning commission is not a prerequisite to approval by the city council. Nor is there any warrant or requirement in the statute for the approval of the electorate of the city. The approval of the city council gave the housing authority the signal to proceed to formulate plans for the proposed 10,000 unit project. No contention is made that the action of approval by ordinance instead of resolution was inappropriate. The phrase "duly adopted" modifying the word "resolution" in section 8(b) added nothing insofar as authorized action by the city council was concerned. The quoted phrase was recognized as redundant when it was deleted at the time the provision was codified as section 34313.

Until the city council authorized the project by its approval, there was no project as to which any directed action with respect to plans, surveys, and the like could be taken. Thereupon as to the location, development and construction of the project, section 34326 provides: "All housing projects are subject to the planning, zoning, sanitary, and building laws, ordinances, and regulations applicable to the locality in which the housing project is situated. In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any larger plan or long-range program for the development of the area in which it functions."

The foregoing provision requires the authority to conform the plans for location, use, sanitary improvements and building restrictions to the laws, ordinances and regulations applicable in the locality selected, and to consider the relationship of the location and planning of the project to the long range or master plan. As an aid in obtaining the required conformity the city is vested with certain powers under the statute, such as to sell or lease its property to the housing authority or the federal government, to provide municipal sanitary and utility services, to furnish new streets or close existing streets, to plan or replan, zone or rezone, make exceptions to building regulations or ordinances, do any and all things necessary or convenient to aid and cooperate in the planning, undertaking, construction or operation of housing projects, and to enter into cooperation and other agreements respecting the action to be taken as to any of these matters (Health & Saf. Code, §§ 34509-34516) and incur the

expenses thereof (§ 34518). The exercise of any of the granted powers is authorized to be taken by resolution of the city council adopted by a majority of the members present at a meeting. The resolution may be adopted at the meeting at which it is introduced, is to take effect immediately and need not be laid over, published or posted. (Health & Saf. Code, § 34521.)

There is no requirement implicit in the language of section 34326 that there must be a report to and recommendation from the planning commission prior to the city's approval pursuant to section 34313. At the time when approval is required by the city council no surveys or plans have been made or undertaken to determine the location or details of construction in connection with the project. In fact no work on a proposal for the development, construction or ownership of the project by the housing authority could be undertaken until the city had given its approval. The housing authority could take no step to conduct surveys and formulate plans until the city approved the project and authorized an application to the federal agency for the preliminary loans and contributions which would enable the authority to proceed. Sites for the project were not acquired nor required to have been selected prior to the city's approval.

As noted in the decision in the companion case of *Housing Authority* v. *City of Los Angeles,* the Housing Authorities Law was expressly intended to make available the means for proceeding under the United States Housing Act of 1937. The funds received pursuant to the federal act are the source of financial assistance for the development, construction and ownership of the low-rent housing project by the housing authority. The federal act required as a prerequisite to the granting of the preliminary loan for that purpose the approval of the project by the city and the execution of a cooperation agreement. (42 U.S.C.A. § 1415(7)(a)(b).) And section 34313 of the Housing Authorities Law prohibits development—which necessarily includes planning (42 U.S.C.A. § 1402(5))—until the city approves. It would therefore be a practical impossibility to prepare surveys and plans prior to the time when application with city approval could be made for financing the cost of preparation.

In the concert of action between the federal and the state legislative bodies necessary to obtain the federal assistance, the state Legislature unquestionably intended to cause the provisions of the statute to conform with the provisions of

the federal act and intentionally included the prerequisites required by the latter with procedural means to execute them. The approved application required under the federal act for loans to finance the cost of surveys and plans obviously assumes that plans have not yet been formulated.

The procedural requirements under the state statute were intended to achieve uniformity and expedition of action in all localities in the state where a housing authority operates, and thereby to obviate unnecessary detail and delays in the administrative functions exercised by the city and the housing authority on behalf of the state.

There is therefore no merit in the contention that the submission of plans to the planning commission prior to approval of the housing project by the city was required or that the omission to submit plans to the planning commission prior to approval rendered the action of the city invalid.

After the city's approval of the housing project and the granting of the housing authority's applications to the federal agency for federal loans and annual contributions, the housing authority submitted to and obtained reports from the planning commission relative to the location of the sites, conformance of the projects to the master and local plans, and issuance of conditional use permits. There is no indication other than that it will continue to proceed in accordance with the provisions of the statute. If nonconformity to zoning and building restrictions might ensue by failure of the housing authority to recognize the mandate of section 34326, appropriate redress to compel compliance would be available.

No contention is made that in the exercise of their respective powers under the statute the city or the housing authority will not follow the procedures and comply with the provisions thereof. Other contentions have been answered in the companion case of *Housing Authority* v. *City of Los Angeles*.

The judgment is affirmed. The motion to dismiss the appeal is denied.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.